THE STATE v. RHODE BEVINS, APPELLANT.—43 S. W. (2d) 432.

Court en Banc, November 17, 1931.

*Stratton Shartel,* Attorney-General, and *Henry H. Stern,* Assistant Attorney-General, for respondent.

1048

COOLEY, C.—By information in the Circuit Court of Howell County it was charged that the defendant, Rhode Bevins, on a date named, unlawfully, wilfully and feloniously did have upon and about his person a certain firearm, to-wit, a revolving pistol, while the said Rhode Bevins was intoxicated. The prosecution was under Section 3275, Revised Statutes 1919, now Section 4029, Revised Statutes 1929, which, among other things, makes it an offense for any person to have "in his possession" any firearm when intoxicated. Defendant was found guilty by the jury, and was by the court sentenced to two years' imprisonment in the penitentiary, and he appealed.

In the view we take of the case it is unnecessary to refer to the evidence further than to say that it was sufficient to sustain the verdict of guilty. The information was not assailed and we regard it as sufficient. We find no substantial errors in the record except those to be hereinafter noted.

The jury returned the following verdict:

"We, the Jury, find the Defendant, Rhode Bevins guilty as charged in the Information and we do assess his punishment at one year in the State Penitentiary."

The record shows that when the verdict was returned the following occurred:

BY THE COURT: "Gentlemen, the verdict you rendered in fixing the punishment at one year in the penitentiary, is that your verdict? So say you all?"

The jurors answered in the affirmative and the court at once discharged the jury. The defendant objected and excepted to the verdict. This record entry then appears:

"Whereupon the court by reason of the verdict being for less than two years, to-wit, one year, does assess the punishment at two years' imprisonment in the penitentiary."

Defendant objected and excepted to that action of the court.

The court had given three instructions. No. 1 declared that it was the duty of the jury to receive the court's instructions as the law of the case, hypothesized the facts necessary to be found in order

to convict, and directed the jury, in case of conviction, to assess defendant's punishment "at imprisonment in the state penitentiary not exceeding two years or by a fine of not less than $100 nor more than $1000, or by imprisonment in the county jail not less than fifty days nor more than one year, or by both such fine and imprisonment." The other two instructions dealt with credibility of witnesses, presumption of innocence and reasonable doubt, and need not be noticed. No instruction was given informing the jury that the minimum imprisonment in the penitentiary that could be assessed was two years, which is the minimum term in the penitentiary that can be given in any case. [Sec. 4457, R. S. 1929.]

In due time defendant filed his motion for new trial, wherein, among other things, he charged error in that the court failed to instruct the jury that two years was the least imprisonment in the penitentiary that could be assessed and in discharging the jury without instructing them to that effect "instead of instructing the jury as the court did in effect that they could give the defendant any time in the penitentiary not to exceed two years." It is also alleged that the court erred in increasing the punishment as fixed by the jury.

Appellant has filed no brief and is not represented by counsel in this court. We look to his motion for new trial for alleged errors of which he complains. It does not appear from the bill of exceptions that he objected or saved exceptions to the giving of the instructions which were given or that he requested any instructions or excepted at the time to the court's failure to instruct on all the law of the case. It is the duty of the court, however, without request, to instruct the jury upon all questions of law "necessary for their information in giving their verdict." [Sec. 3681, R. S. 1929.] And it is now settled that a defendant in a criminal case is entitled to have considered on appeal his contention that the court failed so to instruct where the omission was of an essential part of the law of the case necessary for the proper information of the jury, if in his motion for new trial he has properly called the trial court's attention to the alleged omission, even though he did not request an instruction on the subject, nor except, at the time, to the court's failure to give one. [State v. Burrell, 298 Mo. 672, 252 S. W. 709; State v. Gurnee, 309 Mo. 6, 14, 274 S. W. 58; State v. Harrison (Mo.), 24 S. W. (2d) 985.] In this case appellant in his motion for new trial sufficiently pointed out the failure of the court to inform the jury that the least (as well as in this case the greatest) term of imprisonment in the penitentiary that could be assessed was two years. For reasons which will be apparent as we proceed we regard the omission as a failure to instruct on a part of the law necessary for the information of the jury in giving their verdict and

therefore under the rule above stated the error is presented for review on this appeal.

Our code of criminal law and procedure contemplates that on trial to a jury the jury shall determine and assess the punishment within the limits prescribed by the statute, except where the statute expressly authorizes the court to do so or where by statute a specific punishment is fixed with no alternative.

Section 3703, Revised Statutes 1929, provides that "where by law there is any alternative or discretion in regard to the kind or extent of punishment to be inflicted the jury may assess and declare the punishment in their verdict and *the court shall render a judgment according to such verdict, except as hereinafter provided.*" (Italics ours.) The next four sections designate the exceptions.

By Section 3704 it is provided that where the jury agree upon a verdict of guilty but fail to agree upon the punishment to be inflicted or do not declare such punishment by their verdict, and where the jury find a verdict of guilty and assess a punishment not authorized by law, and in all cases of judgment by confession, the court shall assess and declare the punishment and render judgment accordingly.

By Section 3705 it is provided that if the jury assess a punishment, either of imprisonment or fine, below the limit prescribed for the offense, the court shall pronounce sentence and render judgment according to the lowest limit prescribed by law in such case.

Section 3706 provides that if the jury assess a punishment, whether of imprisonment or fine, greater than the highest limit declared by law for the offense, the court shall disregard the excess and pronounce sentence and render judgment according to the highest limit prescribed by law in the particular case.

By Section 3707 the court is authorized to *reduce* the extent or duration of the punishment assessed by the jury if in its opinion the conviction is proper but the punishment assessed is greater than should be inflicted under the circumstances.

It will be noticed that Section 3703 says that the jury "may" assess and declare the punishment and the court "shall" render judgment accordingly, "except as hereinafter provided." The word "may" is interpreted to mean "shall" when referring "to a power given to public officers, and which concerns the public interest and the rights of third persons, who have a claim *de jure* that the power shall be exercised in this manner." [State ex rel. Vernon County v. King, 136 Mo. 309, 319, 36 S. W. 681 and 38 S. W. 80.] But without resort to that rule of construction we think it apparent that the purpose of the foregoing statutory provisions was to place upon the jury the duty, not merely to grant the privilege, of determining the punishment if they can agree thereon and to deny

to the court authority to determine the punishment except where the jury has failed to perform the duty primarily devolving upon it, giving the court the further power, in its discretion, of reducing, but not increasing, a punishment legally assessed by the jury. Correlatively, a defendant would have the right to have the jury perform the duty so imposed by the statute, unless we assume that the duty was imposed for the sole benefit of the State with no concern for the defendant, which we think should not be assumed. Of course the provision cannot be regarded as a privilege granted for the benefit of the jury.

Not only do the statutory provisions referred to clearly point to such legislative intent, but expressions of this court indicate that the court has always so understood and construed them. These statutory provisions in substantially their present form have been in force for a great many years. [See State v. Hamey, 168 Mo. 167, 67 S. W. 620.] In that case the constitutionality of a statute giving the court authority to fix the punishment on conviction of a certain felony (carnal knowledge of a female of previous chaste character) was at issue, it being contended that the statute, in giving the court the power to fix the punishment, violated the defendant's constitutional right of trial by jury. Two members of the court as then constituted argued strongly that the statute did so violate the defendant's constitutional rights. The majority of the court en banc held (correctly, we think) that the right of a defendant to have the jury assess the punishment was not a constitutional right. But, as we understand the decision, it clearly recognizes that the statutory provisions above referred to, then and long prior thereto in force, imposed upon the jury the duty of fixing the punishment, giving the defendant the right to have the jury do so if they could agree, but held that since the duty was imposed by statute and the defendant's right was not a constitutional right the statute could be changed.

In the early case of Fooxe v. State, 7 Mo. 502, the court said:
"This law imposes on the jury the duty of inflicting the punishment, nor has the court any right to fix the punishment, unless the jury disagree, or do not by their verdict inflict any punishment. But the court in this case, told the jury in substance, that this was no part of their duty, and they had authority to bring in a general verdict. Whereas the power of the court is merely contingent, not primary, and only to be exercised where a failure of duty, or a disagreement on the part of the jury, requires its exercise."

The applicable statute law was substantially the same then as now. That case was followed in State v. Gilbreath, 130 Mo. 500, 32 S. W. 1023, in which the court gave in the first instance, with other instructions, one telling the jury if they found defendant guilty and could

not agree on the punishment they should so state in their verdict. Of that instruction this court said:

"The court erred in giving instruction number 4. The law devolved upon the jury the duty of affixing the punishment of the defendant. The court invited the jury to disregard that portion of their duty by giving this instruction."

In State v. Hubbs, 294 Mo. 224, 242 S. W. 675, the soundness of the rule announced in the Fooxe case *on the facts therein* was questioned, the jury in the Fooxe case having announced to the court that they could not agree before the instruction was given. But there was no criticism of the statement that the duty of inflicting the punishment devolved primarily upon the jury. On the contrary, the correctness of that statement was directly recognized, the court saying, 294 Mo. 1. c. 233: "It is the primary duty of the jury to assess the punishment. To permit the court in the first instance to point out the way for the jury to avoid its duty in this regard, as was done in the Gilbreath case, may well be regarded as contrary to the policy of the law."

Many more expressions of this court might be cited indicating the view that the duty of fixing the punishment where there is an alternative is by statute placed primarily upon the jury and that the court may exercise that power only when the jury has failed to agree or properly to discharge its duty in that regard. We have found none to the contrary. The duty being thus imposed upon the jury the defendant certainly has a corresponding right to have that duty properly and intelligently performed and to the end that it may be so performed it is necessary that the jury be properly instructed as to the applicable law. Jurors are not presumed to know the law of the case except as it is given to them by the court in its instructions. Indeed in this case they were expressly told that it was their duty to receive the court's instructions "as the law of the case;" not as part of the law but all of it.

Since the defendant's right to have the punishment assessed by the jury is statutory, not constitutional, he takes it, of course, subject to the limitations and conditions imposed by other pertinent statutory provisions; in this instance by Sections 3704, 3705 and 3706. But he was entitled to have the jury correctly and fully informed as to the various punishments that might be assessed. By instructing the jury that they could assess the punishment at imprisonment in the penitentiary "not exceeding two years" and failing further to instruct them that they could not assess such imprisonment for a less term than two years the court misled the jury and probably induced the assessment of one year in the penitentiary, a punishment "not authorized by law."

The language of Instruction No. 1 regarding the punishment fol-

lows the language of the statute denouncing the offense and prescribing the punishment. But it is not always sufficient merely to use the language of a particular statute in an instruction. That may sometimes be misleading. That the instruction as given, without a further instruction to the effect that two years was the least penitentiary imprisonment that could be assessed, was misleading in this case there can be no doubt. Paraphrasing the language of this court in State v. Rose, 178 Mo. 25, 32, 76 S. W. 1003, it requires very ordinary intelligence to understand from the use of the words "not exceeding two years" that any length of time of imprisonment may be fixed so that it does not exceed the time expressly designated.

There have been many cases in this court affirming the right of the trial court to assess the punishment under the statute, now Section 3704, where the jury had failed to agree thereon or to declare the punishment or had assessed and declared a punishment not authorized by law; also cases wherein the court proceeded under the statutes now designated as Sections 3705 and 3706. But with the single exception of State v. Miller (Mo.), 285 S. W. 90, which we shall consider later, we have been unable to find any case in which such procedure was approved where the failure of the jury to assess a legal punishment apparently was or may have been due to erroneous or insufficient instructions. The theory of those cases is shown in State v. Thornhill, 174 Mo. 364, 74 S. W. 832, where two defendants were tried jointly for felony and the jury found both guilty and assessed their punishment jointly, in contravention of the statute, now Section 3702, Revised Statutes 1929. It does not appear that the jury had not been properly instructed. The court said, 174 Mo. 1. c. 371, that "as no error had occurred up to the point of assessing the punishment, no rule of right or policy demanded that the whole case should be retried when the statute furnished its own corrective for such an irregularity." The controlling fact that "no prejudicial errors are disclosed by the record up to the return of the verdicts" in the Thornhill and other similar cases is pointed out in a well-considered opinion by WALKER, J., concurred in by all members of this division of the court, in State v. Lambert, 318 Mo. 705, 300 S. W. 707. There two defendants were jointly tried for felony. The court failed to instruct the jury to make a separate finding as to each defendant and if both were found guilty to assess their punishments separately. The defendants had not requested such instruction, but the point was presented in their motion for new trial, as in this case. It was held that such instruction was an essential part of the law of the case, necessary for the information of the jury in rendering their verdict, therefore a matter upon which it was the mandatory duty of the court to instruct under present

Section 3681, and that the point was therefore presented for review. Concerning the right of the trial court to correct the error and render proper judgment under Section 4048, Revised Statutes 1919, now Section 3704, Revised Statutes 1929, the court said:

"While Section 4048, as amended, Laws 1925, p. 197, empowers the trial court to assess the punishment in certain cases, this power can only be properly exercised within the limitations of the statute and in the absence of prejudicial error preceding the rendition of the verdict. [State v. Carroll, 288 Mo. l. c. 408, and cases cited and reviewed.] To rule otherwise would be to empower the trial court to eliminate from consideration other prejudicial errors by a correction of the verdict and the assessment of the punishment. Cases, therefore, where joint findings of guilt have been held to be subject to correction by trial courts and not grounds of error are those in which no preceding prejudicial error appears in the records."

The court held that the failure of the trial court properly to instruct the jury was prejudicial error for which the judgment was reversed and the cause remanded.

In State v. Miller, supra, two defendants were tried jointly and a single verdict of guilty with joint assessment of punishment was returned following an instruction of the court. The court, however, sentenced the defendants separately, which, it was held, satisfied the statute. That decision seems to be out of harmony with the later decision in State v. Lambert, supra, and the still later case of State v. Craft et al. (Mo.), 23 S. W. (2d) 183. In the latter case there were two defendants and, as in the Lambert case, the trial court failed to instruct the jury to make separate findings and in case of conviction separate assessments of punishment, for which error the judgment was reversed and the cause remanded, although the jury had returned separate verdicts of guilty. The court said it was not a question of separate verdicts, "but a question of whether the jury was instructed and knew that it could convict one defendant and acquit the other . . . ." State v. Lambert, supra, was approved and followed on that point and also in the holding that the omission of a proper instruction on that subject was a failure to instruct on an essential part of the law of the case.

The learned judge who wrote the opinion in State v. Miller, supra, concurred in both the Lambert and Craft cases, which, being later cases, in effect overrule State v. Miller in so far as the latter announces a rule contrary to the holdings in the Lambert and Craft cases.

The principle involved in the case at bar is the same as in the Lambert and Craft cases. State v. Duddrear, 309 Mo. 1, 274 S. W. 360, also involves the same principle and is more directly in point on the facts. Duddrear was convicted of a felony, his punishment

assessed by the jury at twelve years' imprisonment in the penitentiary and he was sentenced accordingly. The maximum punishment allowed by the statute was ten years. The trial court had instructed the jury that if found guilty the defendant's punishment should be assessed at imprisonment in the penitentiary "not less than two years," but had neglected to instruct that the maximum was ten years, which was held to be reversible error. The court said, 309 Mo. l. c. 5:

"The statute (Sec. 4050, R. S. 1919) (now Sec. 3706, R. S. 1929) authorizing the court, if the jury assess a punishment in excess of that prescribed by law, to disregard the excess and pronounce sentence and render judgment according to the highest limit prescribed by law in regard to the particular case, if it had been observed, could not be invoked to sustain this conviction. The purpose of this statute is to enable the trial court to render a correct judgment where the jury has been properly instructed as to the degree of punishment and returns a verdict in disregard of such instruction and in excess of the legal limit; but the statute confers no power of amendment on the trial court where the error, as here, consists in a misdirection by the court itself. [State v. Britton, 183 S. W. (Mo.) 295.]" See also State v. Milligan, 170 Mo. 215, 70 S. W. 473.

In the instant case the record entry following the entry showing reception of the verdict indicates that the trial court may have proceeded under Section 3705, Revised Statutes 1929, upon the theory, perhaps, that the jury had indicated by their verdict that they meant to inflict imprisonment in the penitentiary and that the language of said section, "If the jury assess a punishment, whether of imprisonment or fine, below the limit prescribed by law," etc., means a punishment *of the kind or class* indicated in the verdict which is below the prescribed limit *of that class* of punishment. A construction of Section 3706, Revised Statutes 1929, which would seem to authorize such interpretation of Section 3705 was adopted in State v. Dummitt, 318 Mo. 1185, 2 S. W. (2d) 731. We need not decide, however, whether Section 3705 is susceptible of such construction or whether the applicable statute would be Section 3704, which authorizes the court to assess the punishment where the punishment assessed by the jury is one not authorized by law, because the court was not authorized to act under either section where, as in this case, there was prejudicial error preceding the rendition of the verdict which may have been and doubtless was instrumental in causing the erroneous assessment of punishment by the jury.

We are not, of course, to be understood as holding that the giving of an erroneous instruction or the failure properly to instruct as to the punishment that may be inflicted would of itself be reversible error where it is patent from the record that the defendant was not

thereby prejudiced. In this case it is by no means apparent that he was not prejudiced.

There is another error in the record which would require reversal and remanding, not however for new trial but only for the rendition of a proper judgment. The judgment entered of record was for conviction of grand larceny, not for conviction of the offense for which defendant was tried and convicted. The record showing allocution, sentence and judgment, except for the differences in naming the offenses, is almost identical with that in State v. Hesterly, 178 Mo. 43, 76 S. W. 985, which case, because of such error, was reversed and remanded with directions to the trial court to sentence the defendant and render judgment in accordance with the verdict.

For the error above pointed out, the failure properly to instruct the jury as to the punishment which might be inflicted, the judgment is reversed and the cause is remanded for new trial. *Westhues, C.,* concurs; *Fitzsimmons, C.,* dissents.

PER CURIAM:—The foregoing opinion of Cooley, C., in Division Two is hereby adopted as the opinion of Court en Banc. *Ragland, Ellison, Frank,* and *Henwood, JJ.,* concur; *White, J.,* dissents in separate opinion in which *Atwood, C. J.,* and *Gantt, J.,* concur.

WHITE, J. (dissenting)—I dissent because I think the well-written and plausible opinion of Judge Cooley shows a misconception of the statutes and the decisions.

I. We should first take a common sense view of this case.

The jury found the defendant guilty as charged, but assessed his punishment at one year in the state penitentiary—a punishment which the law does not allow to be inflicted. For this error and the failure of the court to instruct the jury that the minimum punishment in the penitentiary was two years the judgment is reversed and the cause remanded for new trial.

The determination of the defendant's guilt and the assessment of his punishment are two separate and distinct functions, separately performed. The jury must first find the defendant guilty. Then the jury may, or the court shall, under certain circumstances, assess the punishment.

The defendant was found guilty by the jury and no error appears in the record of the trial on the merits.

The ruling of the majority opinion turns upon the contention that the jury must in the first instance assess punishment, or make a try at it, before that function can be discharged by the judge. Of course, if that is correct the case could be remanded with directions to the trial court to summon a jury and to let that jury upon the

evidence introduced at the trial, or upon hearing the witnesses again, assess the punishment with instruction that the guilt had already been determined. Appellant knows very well that the trial judge can assess a proper punishment, if the case is remanded for the purpose. But that is not what the appellant wants. He wants a *new trial* on the merits to determine whether he is guilty or innocent— a matter already adjudicated against him without error—and that is precisely what the majority opinion gives him. Something to which, under the circumstances, he is not entitled. A defendant charged with a crime has many technical advantages over the State. But he has not that advantage. That issue is *res adjudicata.*

II. Has a defendant in such case a right to have the jury in the first instance determine the punishment which may be inflicted after being found guilty? He has no such constitutional right. The matter was considered at length and many authorities cited in the case of State v. Hamey, 168 Mo. 167, where it was held that the provision in Section 28, Article II, of the Constitution, "the right of trial by jury as heretofore enjoyed shall remain inviolate," means the right to have a jury determine the guilt or innocence of the accused. "As heretofore enjoyed" means as the right existed at common law, under which the jury did not assess the punishment; it was assessed by the court.

But the opinion argues that the defendant has a statutory right to have a jury in the first instance assess his punishment. It may be said just here that unless he has such a right the conclusion of the opinion is wrong. If he has no such statutory right then no error in instructing the jury upon that point and no error in the verdict of the jury assessing such punishment would authorize a new trial, for the court could perform that duty. That must be conceded upon the theory adopted by the opinion.

In order to reach the conclusion that the jury must in the first instance assess the punishment, the opinion holds that the word "may" in Section 3703, authorizing a jury to assess punishment, must be construed to mean "shall"—a construction so strained as to be entirely out of harmony with the context and cognate statutes.

Section 3703 provides that the jury in all cases of conviction "*may* assess and declare the punishment on their verdict."

Section 3704 says that where the jury finds a verdict of guilty "and fail to agree upon a punishment to be inflicted *or do not declare such punishment* by their verdict; the court shall assess and declare the punishment." And, where the jury "assess a punishment not authorized by law," "and in all cases of judgment by confession," the court shall assess the punishment.

Section 3705 provides if the jury assess a punishment below the

1058

limit prescribed by law for the offense the court shall pronounce and render judgment according to the lowest limit prescribed by law.

Section 3706 provides that if a jury assess punishment greater than the highest limit declared by law for the offense the court shall disregard the excess and pronounce sentence according to the highest limit prescribed by law.

Section 3707 provides the court shall have power *"in all cases of conviction"* to reduce the extent or duration of punishment assessed by the jury, if in its opinion the conviction is proper but the punishment assessed is greater than under the circumstances of the case ought to be inflicted.

In the section relating to the jury's authority the word "may" is used. In each of the four sections relating to the authority of the court the word "shall" is used. In construing these statutes the first rule of interpretation is to give effect to the language as used. It expresses the intention of the lawmakers. They used those words advisedly.

Taking all these statutes together they show the general policy of the law. It was undoubtedly the purpose of the Legislature to regard the phrase "as heretofore enjoyed" in the Constitution as limiting the right of the defendant to what those terms imply.

The opinion, however, gives this reason for making "may" mean "shall:"

"The word 'may' is interpreted to mean 'shall' when referring to a power given to public officers and which concerns public interests and the rights of third persons."

Let us see how that principle matches up with this case. So far as the public interest is concerned here it is in seeing the law enforced and that anyone convicted of a crime shall be punished according to law.

As to the "rights of third persons," it may be presumed that in this instance the writer of the opinion means the rights of the defendant. The right claimed by the defendant is to have the jury assess his punishment in the first instance, and the section must be construed so that "may" means "shall" to protect a right which defendant did not have until the section was so construed. That is, the section must be construed to create a right in order that it may be construed so as to protect that right. That reasoning in a circle is the logic by which we reach the conclusion. It is like the man who in order to increase his income paid himself a salary out of his earnings. The case cited in the opinion in support of that construction, State ex rel. v. King, 136 Mo. 316, l. c. 317, is entirely different in its facts. It simply determines the duty of the county court as regards the retention of fees by an officer. After the officer is permitted to retain certain fees then the county

court must allow them. In that case there are no facts nor any statute similar to those under consideration here.

The language of the statutes under consideration seem to be overlooked. For instance, Section 3704 declares that where the jury agree upon a verdict of guilt but fail to agree upon the punishment *"or do not declare such punishment by their verdict"* the court shall assess the punishment. How can that be construed to mean that the jury *must* assess the punishment? It is not merely where they fail to agree upon the punishment but where they *"do not"* assess it. Where can one find broader language to express a discretion? No condition is attached to *"do not."* The jury may do it or not as they please. If they do not, the court must.

Then Section 3707—*"The court shall have power *in all cases of conviction* to reduce,"* etc. All these sections taken together show the legislative policy did not contemplate that the jury *must* in the first instance assess the punishment.

Now see where the interpretation in the opinion leads if the reasoning should be sustained. If the jury must in the first instance, as claimed, assess the punishment, then no verdict can be good unless they do assess the punishment. If the jury must do it where would we stop short of the performance of that duty? That construction cannot harmonize with the discretion mentioned in Section 3704.

III. The authorities do not support the conclusion. The opinion cites the case of Fooxe v. State, 7 Mo. 502. In that case the court instructed the jury that they had a right to return a verdict of guilty without assessing any punishment. That was held to be error and the judgment reversed for that error, the opinion saying that the law imposes upon the jury the duty of inflicting the punishment and the trial court was in error in telling the jury it was no part of their duty; that the power of the court was contingent and not primary. That ruling was approved and quoted in the case of State v. Gilbreath, 130 Mo. 500, where after the jury had been out a long time they came in but they could not agree. The court thereupon gave an additional instruction that they have a right to return a verdict of guilty without assessing any punishment. That instruction was held error and the judgment reversed, the opinion quoting at length from the Fooxe case.

Both of those cases came under review in this court in the case of State v. Hubbs, 294 Mo. 224, where (l. c. 229-230), the jury returned the verdict into open court, the jury was discharged and the court assessed the punishment. The bill of exceptions showed that while the jury was deliberating the court inquired how they stood as to numbers. The foreman reported that they had agreed as to the guilt of the defendant but had not agreed upon the

punishment, and inquired if they could return that kind of a verdict, and the court replied that they had that right. This was over the objection and exception of the defendant. The opinion takes that as what actually occurred and holds it was not error. It quotes from the Fooxe case and the Gilbreath case, and while the court distinguished the Gilbreath case the conclusion shows there is no distinction. In the Fooxe case the jury were instructed in the first instance that they might return a verdict without assessing the punishment. In the Hubbs case after they had been out and had failed to agree upon the punishment they were instructed by the court they had a right under the statute to return such a verdict. The same thing occurred in the Gilbreath case. If the jury had such right under the law where was the error in instructing them that they had? And what difference did it make whether that instruction was given them at the start or given them during the progress of their deliberations? The court distinctly said (p. 234): "We think the rule laid own in the Fooxe case should not be followed here." The court quoted from State v. Emery, 76 Mo. 348, where error was assigned to the remarks of the prosecuting attorney when he told the jury that if they found the defendant guilty and could not agree upon the punishment they could return into court the verdict of guilty and his honor the judge would fix the punishment. The court there said that the prosecuting attorney merely stated the law and made this pertinent statement quoted in the opinion in the Hubbs case: ·

. "Has it come to this, that the truth is to be assigned for error in this court?"

Thus the opinion in the Hubbs case distinctly held that the Fooxe case should not be followed and ruled directly contrary to the ruling in the Gilbreath case, impliedly overruling the latter. What is that "truth" which the jury may be told? It is that they may or may not assess the punishment. Under the ruling in the Hubbs case the court could not tell the jury that they "must" assess the punishment, but properly told them the "truth"—that they could return a verdict without it. The jury were entitled to be instructed "upon all the law of the case," and were so instructed when told that they did not have to assess the punishment.

Two other cases are cited by the opinion which show the misconception of the law. One is State v. Lambert, 318 Mo. 705, where the misconception is apparent because a passage from it is quoted which is directly contrary to the ruling here. Error was assigned (p. 709), because the court failed to tell the jury that they had a right to find one of the defendants guilty and one not guilty, or both guilty or both not guilty, if the evidence warranted it. That was the error on which the judgment was reversed. It didn't go merely to the

assessment of punishment. It *went to the determination of the guilt or innocence of both defendants who were on trial,* a constitutional jury function. What has that principle to do with the matter under consideration here—the fixing of punishment *after* the finding of guilt? It is true the court in that case finds there was error because the jury found the defendants guilty and assessed their punishment jointly instead of separately as required by statute. [Sec. 3702, R. S. 1919.] That, of course, was error which could be avoided on another trial, but the opinion *did not reverse the judgment on that ground.* It says of that error, l. c. 711:

"While Section 4048 (Sec. 3704, R. S. 1929), . . . empowers the trial court to assess the punishment in certain cases, this power can only be properly exercised within the limitations of the statute and *in the absence of prejudicial error preceding the rendition of the verdict.*"

The *only* error *"preceding the verdict"* was the failure to instruct that the jury might find one defendant guilty and the other not guilty.

Some confusion arises when the court on the same page used the expression "joint findings of guilt" when plainly "joint assessments of punishments" was meant—a confusion which follows the majority opinion here all through. But the matter was cleared up when the court said, l. c. 712:

"The facts in this case may therefore be thus summarized: the defendants were jointly charged and thus tried; they were entitled, as a matter of right, to *an instruction* defining the power of the jury *in determining as to their guilt, not jointly but severally.* They were not given this right. *A joint verdict, both as to their guilt and the extent of their punishment,* was rendered. The trial court, ignoring their right as to *the instruction* to which they were entitled, proceeded on the assumption of the prior regularity of the proceeding to correct the verdict and assess their punishment. This was in excess of the court's authority and did not minimize the injurious effect of the failure to properly instruct the jury." (Italics mine.)

How can this be tortured into meaning that the judgment was reversed for any reason other than failure to instruct on the *determination of guilt* separately and not jointly.

In the other case cited in the opinion, State v. Craft, 23 S. W. (2d) 183, l. c. 186, the principle there stated is clear:

"The defendant complains of the State's instructions on the ground that it did not afford the jury an opportunity to convict one defendant and acquit the other, or find both guilty or not guilty, as the evidence warranted it"—citing the Lambert case—a matter that went directly to the guilt or innocence of one or both of the defendants. It had nothing to do with assessment of punishment.

Those two cases are cited in the opinion here in support of the proposition that the jury *must* first assess the punishment, and if they fail to do so on an erroneous instruction the court is powerless to do it. The majority opinion here was no doubt influenced by the misconception of what was decided in those two cases.

In the Lambert case the opinion cites approving State v. Carroll, 288 Mo. 392, with which the majority opinion disagrees. There (l. c. 408-410), the only error complained of in the verdict was the alleged violation of Section 4046, Revised Statutes 1919 (Sec. 3702, R. S. 1929), in assessing the punishment, not separately. There was no complaint that the jury found the defendants guilty jointly.

It should be noted here that Section 3702, Revised Statutes 1929, requires, where several defendants are jointly tried, that in case of conviction the *punishment* of each must be separately assessed. *There is no requirement that there shall be separate verdicts of guilty.* The law requires an instruction that the jury may find one or more of several defendants guilty and the rest not guilty. Having done that, they may state the finding jointly or in one verdict, or separately, provided they separately state the punishment, or fail to state it at all. The verdict in the Carroll case, 288 Mo. l. c. 400, seems to comply with the law. The court might very well have affirmed the judgment without remanding. Perhaps the opinion there should have pointed out the distinction between the determination of guilt and the assessment of punishment, and that the only error, if any, in the verdict was in the latter.

The court called attention to the statute which provided that upon conviction the punishment of each must be assessed separately, citing the Statute (now Section 3704) which provides that if the jury do not assess the punishment the court shall assess the punishment, and said:

"It is held that where a jury renders a verdict, such as rendered in this case, fixing a joint punishment for crime against several defendants, the error may be corrected if the trial court, in pronouncing the sentence and judgment against the defendant, assess separately their punishments." Citing numerous cases.

The opinion then quoted State v. Person, 234 Mo. l. c. 268, where the latter recited a passage from State v. Gordon, 153 Mo. 576:

"The court, therefore, should either have refused to receive the verdict and suggested its being put in proper form or failing in this should itself have assessed and declared the punishment . . . which the jury in this case, by their defective verdict, failed to do.

"For this cause alone the judgment must be reversed and the cause remanded, *with directions to the trial court to bring the defendant before it, and having done so to proceed to assess and declare his punishment.*" (Italics mine.)

That was the order made in the Carroll case. That is the order that should be made here. The Lambert case and the Craft case were reversed solely on the ground that the jury was not authorized to find separately as to the *guilt* or *innocence* of each of the two defendants. Apparently there was no instruction to the jury in the Carroll case that they must assess the punishment separately just as in this case there was no instruction fixing the minimum punishment. So far as the justice of the matter is concerned, so far as the law is concerned, there is no distinction between the different kinds of failure to instruct the jury as to the matter of punishment. How is it a more serious injury to the defendant to have the court fail to instruct on the minimum punishment in the penitentiary and the failure of the court to instruct that they must assess the punishment separately if they assess it at all? The Carroll case was followed in case of State v. Miller, 285 S. W. 90. There again the only point considered was that the punishments of defendants were assessed jointly, and because the record shows that the *court* separately fixed the punishment the requirements of the statute were satisfied. The jury *were erroneously instructed* in regard to it; if they found the defendants guilty, to assess *their* punishment. (Not separately.)

In State v. Thornhill, 174 Mo. 364, the jury found both defendants guilty of larceny and assessed their punishment jointly at two years in the penitentiary. It is not stated, but likely that the jury were not instructed that they must assess the punishments separately. They would not be likely to disobey a direct instruction to that effect. The court said (l. c. 371), opinion by Judge JAMES B. GANTT, referring to the case of State v. Gordon, supra:

"This ruling then and now commends itself for the reason that as no error had occurred up to the point of assessing the punishment no rule of right or policy demanded that the whole case should be retried when the statute furnished its own corrective for such irregularity."

In this case the verdict does not fall within Section 3705, Revised Statutes 1929, where the punishment assessed was below the minimum punishment, because the law allowed the punishment for the offense at fine or imprisonment in the county jail—a still lower punishment. It would not come under Section 3706, because it was not greater than the highest punishment allowed, which was two years in the penitentiary. The verdict was one year in the penitentiary, which the law did not allow. It comes within Section 3704, where the jury finds a verdict and assesses a punishment not authorized by law. The court then should have assessed a lawful punishment. The case should be remanded to the trial court that it may perform that duty.

If the majority opinion is to prevail we necessarily by implication

overrule the Carroll case, the Thornhill case, the Miller case, the Emery case, the Hubbs case, and others.

The effect would be more than that. The ruling in the majority opinion is purely technical, disregarding the merits of the case, the question of guilt already established with no error. This court in the past few years has been making history in getting away from technical constructions which hinder the administration of justice in criminal cases. The tendency has been to adjudge a case upon its merits. The ruling in this case is a recession; we go back a half generation to the time when a small technical error not affecting the merits or the question of guilt or innocence was permitted to impose upon the State a retrial or to work an absolute reversal of a case which already had been tried without error upon its merits.

For these reasons I dissent. *Atwood, C. J.,* and *Gantt, J.,* concur.